UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


A.A., et al.,                                                    Case No. 3:15-cv-1747

                        Plaintiffs

            v.                                                MEMORANDUM OPINION

Otsego Local Schools Board of Education, et al.,

                        Defendants

### I. BACKGROUND

            This matter is before me on Defendants' motion for judgment on the pleadings (Doc. No.

20), Plaintiffs' opposition (Doc. No. 25), and Defendant's reply (Doc. No. 30).  For the reasons

stated below, the motion for judgment on the pleadings is granted in part and denied in part.


            The relevant factual background surrounding this litigation was set forth in the amended

complaint as follows:

> 10. During the academic year 2014-15, A.A. was enrolled as a student at the
> Otsego Elementary School. From the beginning of that academic year, A.A.
> began to experience taunting and bullying from the other students based
> upon his national origin. The abuse was both physical and oral in nature,
> and occurred both on school grounds as well as on the school bus.
>
> 11. Mrs. Demirovic repeatedly complained to Otsego officials, including but not
> limited to A.A's teachers, the Principal of the School, and the Superintendent
> of Schools, of this disparate treatment of her son based upon his national origin.
> Mrs. Demirovic repeatedly requested that Otsego take appropriate
> actions to remedy the situation and protect her son from this physical and
> emotional harassment which was based upon his national origin. Otsego
> and its agents and employees failed to take appropriate action to remedy the
> situation and protect A.A.
>
> 12. Indeed the only actions taken by Otsego were retaliatory in nature. Rather
> than take any action against other children whose national origin was not in
> question, Otsego (through its agents) relocated A.A. on the school bus to sit

with children of a much younger age, thus exacerbating the problems he experienced with bullying and harassment by his fellow classmates.

13. On or about September 30, 2014, A.A. joined a group of students who were discussing in jest a computer hacking incident wherein one student's computer had been hacked and a threatening message posted. The content of the message was a threat to kill the student that owned the hacked computer system. After joining in the conversation, A.A. joked that he was a computer hacker.

14. As a result of this offhand comment made completely in jest, Otsego – through its agents and employees – singled out A.A. on the basis of his national origin and interrogated him (and only him) without the knowledge or consent of Mrs. Demirovic. Through this interrogation, Otsego determined that A.A. did not hack into the computer system in question.

15. Regardless of his innocence, and with reckless disregard for A.A.'s safety and/or reputation at the school, Otsego – through its agents and employees - forced A.A. to write a false letter to the threatened student reading, in pertinent part, "I'm sorry for telling you I was the killer."

16. A.A. was the only child involved in this situation who was so disciplined, and was singled out by Otsego – through its agents and employees – solely on the basis of his national origin.

17. On October 1, 2014, A.A. was physically assaulted by a student in retaliation for the alleged computer hacking incident. Otsego failed to take any action to protect A.A. from such assault or to punish the student who committed the assault.

18. On October 8, 2014, while at school, A.A. became upset and was instructed to go to the principal's office. He refused. Ruckstuhl happened to be in attendance at Otsego Elementary School in uniform and acting in his official capacity at the time. Ruckstuhl was asked by school officials to escort A.A. to the principal's office. A.A. refused to go.

19. Without cause or provocation, Ruckstuhl physically seized A.A. and attempted to relocate him to the principal's office by force. A struggle ensued, leading to Ruckstuhl repeatedly assaulting and battering A.A. by slamming his body to the floor; detaining A.A. without cause; forcibly placing him in the prone position and restraining him mechanically with handcuffs; and arresting him.

20. Further, at no point during the interaction between Plaintiff A.A. and Ruckstuhl was there (a) an imminent danger of physical harm or "direct threat" to A.A. or to anyone else that required Ruckstuhl to use handcuffs or prone restraint; or (b) a "direct threat" justification for the placement of the handcuffs, the prone restraint, or for the prolonged period of time that the handcuffs and prone restraint were imposed. The only basis for the handcuffing and prone restraint was Ruckstuhl's desire for compliance from A.A.

21. During this time, Principal Betsey Murry recorded Ruckstuhl's attack on A.A. on Ruckstuhl's cellular phone.

22. After Ruckstuhl forcibly placed A.A. into a position of prone restraint with handcuffs, Mr. and Mrs. Demirovic were called to come to the school. When they arrived, Ruckstuhl showed them the video of A.A. being forcibly seized; placed into prone restraint with handcuffs; and arrested. He informed the Demirovics that A.A. would not be released from handcuffs until he spoke with the Wood County Prosecutor.

23. At this same time, Ruckstuhl informed the Demirovics that A.A. would be charged with several felonies and likely be taken to jail. Ruckstuhl further stated his belief that A.A.'s actions were a result of his Bosnian heritage. When Mrs. Demirovic tried to calm A.A. down by speaking to him in Bosnian, Ruckstuhl instructed her to speak only in English.

24. After allegedly speaking with the Wood County Prosecutor, Ruckstuhl removed the handcuffs from A.A. and released him from custodial arrest. A.A. subsequently required and received medical attention for injuries sustained at the hands of Ruckstuhl.

(Doc. No. 1 at pp. 4-7).

Based upon these factual allegations, Plaintiff, A.A., a minor, by and through his next friend and mother Mirela Demirovic, as well as his parents, individually, instituted this case with the following causes of action:  (1) violations of Title VII against Otsego Local Schools; (2) violations under 42 U.S.C. § 1983 of the Fourth and Fourteenth Amendments against Ruckstuhl; (3) violations under § 1983 of the Eighth and Fourteenth Amendments against Ruckstuhl; (4) assault and battery against Ruckstuhl; (5) negligent infliction of emotional distress against Ruckstuhl; (6) intentional infliction of emotional distress against Ruckstuhl; (7) false arrest against Ruchstuhl; (8) false imprisonment against Ruckstuhl; (9) negligence per se regarding O.R.C. § 3319.41 and Ohio Admin. Code 3301—35-15 against Otsego and the Wood County defendants; (10) negligence per se regarding O.R.C. § 3319.46 and Ohio Admin. Code 3301—35-15 against Otsego and the Wood County defendants; (11) negligence per se regarding O.R.C. § 2919.22 against Otsego and the Wood

County defendants; (12) respondeat superior against the Wood County Defendants; and (13) respondeat superior against Otsego Local Schools.

After the Otsego Defendants, the Wood County Defendants, and Ruckstuhl, filed their respective motions for judgment on the pleadings, Plaintiffs filed a Rule 41(a) dismissal. (Doc. No. 26).

On April 4, 2016, I approved the dismissal of Defendants Otsego Local Schools, Wood County, Ohio and the Wood County Sheriff's Department. (Doc. No. 27). Brian Ruckstuhl is the remaining Defendant in the litigation.

## II. RELEVANT LEGAL STANDARDS

The same pleading requirements apply to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) and a motion for judgment under the pleadings pursuant to Fed. R. Civ. P. 12(c). *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). The pleadings must demonstrate sufficient factual matter, if taken as true, which state a claim "plausible on its face." *Bell Atl. Corp. v. Twombly* 550 U.S. 544, 470 (2007). "A plaintiff falls short if [they] plead[] facts 'merely consistent with a defendant's liability' or if the alleged facts do not 'permit the court to infer more than the mere possibility of misconduct. . . .'" *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir.) (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50) *cert denied*, 131 S.Ct. 1047 (2011). A court "construe[s] the Plaintiffs' complaint in the light most favorable to them, and accept the complaint's allegations as true, drawing all reasonable inferences in favor of the Plaintiffs." *Coley v. Lucas County, Ohio*, 799 F.3d 530, 537 (6th Cir. 2015), citing *Crugher v. Prelesnik*, 761 F.3d 610, 513 (6th Cir. 2014).

On a motion for judgment on the pleadings, all well-pleaded allegations of the non-moving party must be taken as true. *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008). Judgment is granted only where there is no material issue of fact involved and the moving party is

entitled to judgment as a matter of law.  *Paskavan v. City of Cleveland Civil Service Comm'n,* 946 F.2d 1233, 1235 (6th Cir. 1991).

## III.  DISCUSSION

Defendant Ruckstuhl moves for judgment on the pleadings asserting there are insufficient factual allegations to support the alleged § 1983 and state law violations.  He further contends that even if the factual allegations are sufficient, he is entitled to qualified or statutory immunity from suit.  I turn to address each of these arguments in turn.

### A.  Sufficiency of the Factual Allegations

The Defendant challenges the lack of detail in the amended complaint as insufficient to allege plausible constitutional or state law violations.  I disagree.

To survive a motion to dismiss under Rule 12(b)(6), "even though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'"*Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.  *Twombly*, 550 U.S. at 555  (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action").  A complaint must state sufficient facts to, when accepted as true, state a claim "that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

In conjunction with this standard, the Court is cognizant that Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. at 93  (*citing Twombly*, 550 U.S. at 596); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir 2008).

The amended complaint is comprised of 23 pages and 101 paragraphs, with the factual section comprising paragraphs 10 through 32.  Ignoring the legal conclusions contained within the factual recitations, I find there is sufficient detail to put the Defendant on notice of both the federal and state claims asserted against him.   The Defendant's motion for judgment on the pleadings is denied as to this branch.

## B.  Qualified Immunity

Qualified immunity shields "government officials performing discretionary functions… from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The analysis employed by the Sixth Circuit in determining qualified immunity focuses on whether a constitutional right was violated and whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated that right.  *Occupy Nashville v. Haslam*, 769 F.3d 434, 442 (6th Cir. 2014), citing *Saucier v. Katz,* 533 U.S. 194 (2001).  In *Pearson*, the Supreme Court approved disregarding the mandatory analytical sequence adopted in *Saucier* and allowed district courts to "exercise their sound discretion in deciding which of the two prongs in the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  555 U.S. at 236.   While the order of these questions is left to the discretion of the district court, "if either one is answered in the negative, then qualified immunity

protects the officer from civil damages." *Goodwin v. City of Painesville*, No. 14-3120, 731 F.3d 314, 321 (6th Cir. 2015) (citations omitted).

For purposes of this analysis, I turn to the first issue, namely whether a constitutional right was violated on the facts alleged. The Defendant's argument is as follows:

> Plaintiffs' claim that Deputy Ruckstuhl "physically seized" A.A. "by force" without cause of provision." (Amend. Comp. ¶19). Plaintiffs admit that after Deputy Ruckstuhl physically seized A.A. after he refused to go to the principal's office voluntarily, "a struggle ensued." (Amend. Comp. ¶19) A.A. disobeyed multiple lawful commands and instructions of Deputy Ruckstuhl (Ans. ¶19) The struggle created a "direct threat" to staff members and students in the area, two Graham factors that weigh in favor of Ruckstuhl's reasonable seizure of A.A. Once A. A. physically resisted his lawful seizure, Deputy Ruckstuhl could not have assaulted or battered A.A. His actions are privileged from such claims as a law enforcement officer. Thus, Deputy Ruckstuhl justifiably restrained A.A. and handcuffed him so that he could do no harm to himself or others. Therefore, considering all of the facts alleged, Deputy Ruckstuhl did not unlawfully seize A.A.

> As for Plaintiff's claim of excessive force, when there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is insufficient as a matter of law to state a claim of excessive force under the Fourth Amendment. *Neague v. Cynkar*, 258 F.3d 504 (6th Cir. 2001). Plaintiff's Complaint contains no supporting factual allegations supporting the conclusory statement that A.A. received "medical attention for injuries." (Amend. Comp. ¶24) . . .

> Thus, considering the totality of all the facts and circumstances, Deputy Ruckstuhl's physical seizure of A.A. to take him to the principal's office was reasonable and not in a violation of the Fourth Amendment. Once A.A. struggled with Deputy Ruckstuhl, his efforts to control A.A. by restraining him and handcuffing him were reasonable to protect A.A., the deputy, staff members and students in the area from harm. A reasonable law enforcement officer would not have understood that his behavior under the same facts and circumstances violated A.A.'s Fourth Amendment right against unreasonable seizure.

(Doc. No. 20 at pp. 10-11).

The considerations contemplated under excessive force claims were recently addressed by this Circuit:

> Excessive force claims can be resolved under the Fourth, Eighth and Fourteenth Amendments—the applicable amendment depends on the plaintiff's status at the time of the incident: a free citizen in the process of being arrested or seized; a convicted prisoner; or someone in "gray area[s]" around the two. *Burgess*, 735 F.3d at 472; *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002). When a free citizen claims that a government actor used excessive force during the process of an arrest,

> seizure, or investigatory stop, we perform a Fourth Amendment inquiry into what was objectively "reasonable" under the circumstances. *Graham v. Connor*, 490 U.S. 386, 296, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Lanman v. Hinson*, 529 F.3d 673, 680 (6th Cir. 2008).

*Coley*, 799 F.3d at 537.

Reasonable force under a Fourth Amendment claim is guided by factors articulated under *Graham v. Connor*, 490 U.S. 386, 395 (1989), and considers: (1) severity of the crime; (2) immediacy of the threat posed by the suspect; and (3) whether the suspect was actively resisting or attempting to resist arrest. *Dorsey v. Barber*, 517 F.3d 389, 401 (6th Cir. 2008). As observed by the *Graham* Court:

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application," <u>Bell v. Wolfish,</u> 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), however, its proper application requires careful attention to the facts and circumstances of each particular case . . . .
>
> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *See Terry v. Ohio, supra*, at 20-22.

*Graham v. Connor* 490 U.S. 386, 396 (1989).

Accepting the Plaintiffs' factual assertions, Ruckstuhl was instructed by school officials to escort A.A. to the principal's office and A.A. refused to go. "Without cause or provocation" the Defendant is alleged to have seized A.A., a struggle ensued and Ruckstuhl responded by "slamming" A.A. to the floor, forcibly placing in a prone position and restraining him with handcuffs, then arresting him. (Doc. No. 15 at ¶ 19). Although the Defendant argues the phrase "without cause or provocation" is a legal conclusion, it may also certainly be considered a factual statement equating to the absence of conduct. I consider this for the factual assertion it represents but do not consider it for its legal conclusion, which I am prohibited from doing so in this Rule 12(c) analysis.

The Defendant's arguments are based upon factual and legal conclusions which have not been developed through discovery.  Those arguments are ones normally asserted in summary judgment discussions, not ones under Rule 12(c).

To accept the Defendant's version of events would negate this standard and is premature at this juncture.  In fact, the Sixth Circuit has stated that it is "generally inappropriate for a district court to grant a Rule 12(b)(6) motion to dismiss on the basis of qualified immunity."  *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015).

At this preliminary stage, I find the facts alleged lend themselves to differing conclusions on whether the Defendant's conduct constituted reasonable force in these circumstances.  *See e.g. Williams v. Nice*, 58 F.Supp.3d 833, 838-39 (N.D. Ohio 2014), *aff'd sub nom, Williams v. Morgan*, 652 Fed. Appx. 365 (6th Cir. 2016) (genuine issues of material fact existed where eighth grade student threw a temper tantrum after being suspended, resisted arrest and whether the school resource officer used excessive force in restraining her where the student posed no safety threat and suffered injuries).

While the Defendant challenges the allegation of physical injury, I find A.A. has alleged enough to withstand a Rule 12(c) challenge.  Taking the factual allegations in a light most reasonable to the plaintiff, "slamming [A.A.'s] body to the floor" coupled with the statement that he "subsequently required and received medical attention for his injuries," meets the pleading standards for properly alleged injury at this preliminary stage of the litigation.  The Defendant's authority in support on this branch of its motion cites cases involving summary judgment determinations[1] unlike the present situation where discovery has yet to begin.

---

[1] A case relied on by the Defendant was reversed by the Sixth Circuit as the court found the existence of genuine issues of material fact on the excessive force claim and reversed the finding of qualified immunity as to the law enforcement officer at the summary judgment stage.  *Solovy v. Morabito*, 608 F.Supp.2d 859 (E.D. Mich., 2009), *rev'd in part* 375 Fed. Appx. 521, 525-27 (6th Cir. 2010).

As the allegations raise a colorable claim of unreasonable force, I cannot find as a matter of law that the Defendant's conduct did not violate A.A.'s Fourth Amendment rights.

The second inquiry is whether the right was clearly established and whether a reasonable officer would have known that his conduct violated that right.  *Courtright v. City of Battle Creek,* 839 F.3d 513, 518 (6th Cir. 2016).  The Sixth Circuit found the prohibition against gratuitous force was clearly established as of October 2010, albeit in a summary judgment context.  *Williams v. Morgan*, 652 Fed.Appx. 365, 375 (6th Cir. 2016), citing *Norton v. Stille*, 526 Fed.Appx. 509, 513-14 (6th Cir. 2013) and *Hope v. Pelzer,* 536 U.S. 730, 741(2002).

Therefore, I find the Defendant is not entitled to qualified immunity at this juncture of the proceedings.

## C.  Statutory Immunity

The same factual issues pertaining to the allegation of gratuitous force towards an elementary student also precludes dismissal on state statutory grounds.  The Ohio Political Subdivision Tort Liability Act allows for immunity unless the "acts or omissions were with malicious purpose, in bad faith or in a wanton or reckless manner."  R.C. § 2744.03(a)(6).  The amended complaint contains sufficient allegations and inferences which survive a Rule 12(c) challenge.  If reasonable minds could differ on whether his actions towards A.A. were unreasonable, there is sufficient grounds to argue they rise to exceptions stated under § 2744.03(a)(6) and will undoubtedly be the subject of discovery by both parties.  *Coley*, 799 F.3d at 543-44.

## D.  Remaining Claims

### 1.  Remaining Federal Claims

Defendant also challenges Plaintiffs' claim of cruel and unusual punishment in violation of the Eighth Amendment..  The Plaintiffs agree with the Defendant's statement of law as to this claim

and state, they "will dismiss this claim."  (Doc. No. 25 at p. 12).  Accordingly, I will deny this branch of the Defendant's motion as moot.

### 2.  State Law Claims

As I have determined the factual allegations to be sufficient regarding the Fourth Amendment violations, I also find the amended complaint to be sufficient as to the state law claims raised in the Fourth, Fifth, Sixth, Seventh, and Eighth claims for relief.

### a.  Negligence Per Se Claims

Defendant also challenges the legal viability of the claims contained in the Ninth, Tenth, and Eleventh claims for relief sounding in negligence per se.   He charges they must fail as a matter of law because Ruckstuhl is not an individual subject to these statutes or regulations.

Plaintiffs assert three negligence per se claims:

### XIII.  Ninth Claim for Relief -- Negligence Per Se

69.  Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 32 and do further allege as follows:

70.  Ohio Revised Code §3319.41 and the regulations of the Ohio Board of Education Ohio Admin. Code 3301-35-15 protect students such as A.A. by prohibiting School officials and those under their direction and control from:

a.  The use of mechanical restraints such as handcuffs;

b.  The use of prone restraint;

c.  Restraint of any kind that unduly risks serious harm or needless pain to the student, including the intentional, knowing or reckless use of any of the following techniques:

1)  Any  method of limiting respiration;

2)  Pinning down with knees to torso, head and/or neck;

3)  Using pressure points, pain compliance, and joint manipulation techniques;

4)  Dragging or lifting of the student by any type of mechanical restraint; and

5)  Using students or untrained staff to assist with the hold or restraint.

71.  Plaintiff A.A. experienced physical pain, trauma and significant emotional distress during the October 2014 handcuffing and prone restraint. Thereafter, as a result of the handcuffing and prone restraint, he suffered and continues to suffer emotional distress.

72.  Defendants had a duty to protect A.A. from handcuffing and prone restraint as prohibited by Ohio law.

73.  Defendants not only failed in this duty, but Otsego both conspired with and aided and abetted Ruckstuhl in handcuffing A.A. and placing him in prone restraint.

74.  Said actions are violations of Ohio Revised Code §§ of 2903.13 (assault) and 2923.03 (complicity) for which there is civil liability pursuant to Ohio Revised Code §2307.60.

75.  As a direct consequence of these actions, A.A. has suffered and continues to suffer mental anguish, embarrassment, humiliation, pain and suffering, for which he is entitled to compensatory damages and attorney's fees.

## XIV.  Tenth Clam for Relief -- Negligence Per Se

76.  Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 32 and do further allege as follows:

77.  Ohio Revised Code §3319.46 and the regulations of the Ohio Board of Education Ohio Admin. Code 3301-35-15 protect students such as A.A. by prohibiting School officials and those under their direction and control from:

a.  The use of mechanical restraints such as handcuffs;

b.  The use of prone restraint;

c.  Restraint of any kind that unduly risks serious harm or needless pain to the student, including the intentional, knowing or reckless use of any of the following techniques:

1)  Any method of limiting respiration;

2)  Pinning down with knees to torso, head and/or neck;

3)  Using pressure points, pain compliance, and joint manipulation techniques;

12

4)  Dragging or lifting of the student by any type of mechanical restraint; and

5)  Using students or untrained staff to assist with the hold or restraint.

78.  Plaintiff A.A. experienced physical pain, trauma and significant emotional distress during the October 2014 handcuffing and prone restraint. Thereafter, as a result of the handcuffing and prone restraint, he suffered and continues to suffer emotional distress.

79.  Defendants had a duty to protect A.A. from handcuffing and prone restraint as prohibited by Ohio law.

80.  Defendants not only failed in this duty, but Otsego both conspired with and aided and abetted Ruckstuhl in handcuffing A.A. and placing him in prone restraint.

81.  Said actions are violations of Ohio Revised Code §§ of 2903.13 (assault) and 2923.03 (complicity) for which there is civil liability pursuant to Ohio Revised Code §2307.60.

82.  As a direct consequence of these actions, A.A. has suffered and continues to suffer mental anguish, embarrassment, humiliation, pain and suffering, for which he is entitled to compensatory damages and attorney's fees.

### XV.  Eleventh Claim for Relief -- Negligence Per Se

83.  Plaintiffs incorporate herein by reference the allegations set forth in paragraphs 1 through 32 and do further allege as follows:

84.  Ohio Rev. Code 2919.22 provides as follows:

(A)  No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support under this division when the parent, guardian, custodian, or person having custody or control of a child treats the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body.

(B)  No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

(1) Abuse the child;

13

(2) Torture or cruelly abuse the child; or

(3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child.

85.  Defendant Otsego Local Schools, by virtue of its relationship with A.A., had custody and control of A.A. during school hours.

86.  Defendants' actions taken against A.A. through Ruckstuhl and at the direction of Otsego Local Schools were in direct violation of Ohio Rev. Code 2919.22.

87.  Plaintiff A.A. experienced physical pain, trauma and significant emotional distress during the October 2014 handcuffing and prone restraint. Thereafter, as a result of the handcuffing and prone restraint, he suffered and continues to suffer emotional distress.

88.  Defendants had a duty to protect A.A. from handcuffing and prone restraint as prohibited by Ohio law.

89.  Defendants not only failed in this duty, but Otsego both conspired with and aided and abetted Ruckstuhl in handcuffing A.A. and placing him in prone restraint.

90.  Said actions are violations of Ohio Revised Code §§ of 2903.13 (assault) and 2923.03 (complicity) for which there is civil liability pursuant to Ohio Revised Code §2307.60.

91.  As a direct consequence of these actions, A.A. has suffered and continues to suffer mental anguish, embarrassment, humiliation, pain and suffering, for which he is entitled to compensatory damages and attorney's fees.

(Doc. No.15 at pp. 16-20).

The applicable statutes cited in the Ninth and Tenth causes of action cite to sections dealing with positive behavior intervention support; use of physical restraint or seclusion on students pursuant to Ohio Rev. Code § 3319.46, and corporal punishment; and reasonable force and restraint under Ohio Rev. Code § 3319.41.

Under § 3319.41(A), "no person employed or engaged as a teacher, principal, administrator, nonlicensed school employee, or bus driver in a public school may inflict or cause to be inflicted corporal punishment as a means of discipline upon a pupil attending such school."

The amended complaint identifies Defendant Ruckstuhl as "a law-enforcement officer employed by Wood County, Ohio."  (Doc. No. 15 at ¶ 9).  Nothing in the amended complaint or in Plaintiffs' memorandum in opposition disputes Ruckstuhl qualifies as a person subject to these statutes.  Nor do Plaintiffs offer any authority to support their position.  In the absence of any authority, the Ninth and Tenth causes of action are dismissed as a matter of law.

Ohio Rev. Code § 2919.22 is Ohio's child endangerment statute and the Eleventh Cause of Action seeks to impose negligence per se liability via this statute.  The Defendant moves for dismissal of this claim as the Defendant is a "parent, guardian, custodian or a person having custody or control" of A.A.  Plaintiffs contend the statute does not limit the statute to solely parents or guardians.

At least one Ohio appellate court found negligence per se was inapplicable to § 2219.22(A). *Hite v. Brown*, 100 Ohio App.3d 606, 612 (1995).  The same cannot be said for § 2219.22(B).  The Defendant contends that analysis under this section requires an evaluation of "a variety of facts and circumstances—applying the standard of a reasonably prudent person—to determine whether a violation of this statute occurred."  Given the early stage of this litigation and considering the factual allegations contained in the amended complaint, the claims under § 2219.22(B) remain viable for the time being.

I do agree with Defendant that the allegations in this claim aimed at civil recovery for a criminal act (assault and complicity) are not viable in the absence of a criminal conviction.  *See* Ohio Rev. Code § 2307.60.  *Ortiz v. Kazmier*, 2015 WL 1400549 *12 (N.D. Ohio 2015), *aff'd* 811 F.3d 848 (6th Cir. 2016).

Therefore, the Eleventh Cause of action is limited to an alleged violation of Ohio Rev. Code § 2919.22(B) and the related claim in paragraph 90 is dismissed as a matter law.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleading (Doc. No. 20) is granted in part as to portions of the Eleventh Claim, but denied in part (Doc. No. 20) as to the remaining claims regarding Defendant Ruckstuhl.

The motion (Doc. No. 20) is also denied as moot against Otsego Local Schools, the Wood County Sheriff's Department, and Wood County, Ohio.

The Plaintiffs are granted two weeks from the date of this decision to dismiss their Third Claim for relief as noted in their opposition or the Defendant's motion, upon request, will be reinstated.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge