UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

A.A., et al.,            Case No. 3:15-cv-1747

    Plaintiffs,

v.            MEMORANDUM OPINION
           AND ORDER

Otsego Local Schools
Board of Education, et al.,

    Defendants.

## I.      INTRODUCTION

A.A., a minor child, and his mother, Mirela Demirovic, allege Defendant Brian Ruckstuhl, a deputy with the Wood County, Ohio Sheriff's Office who was assigned as a School Resource Officer at the Otsego Local School District, used improper force during an incident involving A.A. on October 8, 2014, when A.A. was in fourth grade. I previously dismissed claims against the Otsego Local Schools Board of Education, Wood County, and the Wood County Sheriff's Office, (Doc. No. 27), and some of the claims against Ruckstuhl. (Doc. No. 32; Doc. No. 34). Further, Alen Demirovic, Mirela's husband, also has dismissed his claims. (Doc. No. 53). The remaining claims are for: (a) violation of A.A.'s Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; (b) assault and battery; (c) negligent infliction of emotional distress; (d) intentional infliction of emotional distress; (e) false arrest; (f) false imprisonment; (g) child endangerment, in violation of Ohio Revised Code § 2919.22(b), through negligence per se. (Doc. No. 15; Doc. No. 32).

Ruckstuhl has moved for summary judgment on all remaining claims. (Doc. No. 80). Plaintiffs filed a brief in opposition, (Doc. No. 91), and Ruckstuhl filed a brief in reply. (Doc. No. 92). For the reasons state below, I grant Ruckstuhl's motion in part and deny it in part.

## II. BACKGROUND

The parties agree that on October 8, 2014, A.A. was sitting at a table in his elementary school cafeteria when he failed to comply with instructions from Principal Betsey Murry for all students to quiet down before dismissal for recess. A.A. suffers from hearing loss due to several early-childhood surgeries and asserts he did not comply with Murry's instructions because he did not hear them. Murry came to A.A.'s table and told him he needed to go to her office while the other students went to recess. A.A. largely ignored Murry, other than to tell her he would not go down to the office. (Murry Dep., Doc. No. 85 at 25); (A.A. Dep., Doc. No. 83 at 35).

The parties' versions of events then begin to diverge. Murry asserts A.A. threw his lunchbox and then crawled under the lunchroom table when Murry instructed A.A. to retrieve it. (Doc. No. 85 at 26). A.A. denies having a lunchbox with him on October 8, much less throwing one, or crawling under a table. (Doc. No. 83 at 34-35). Murry then asked Ruckstuhl, who was talking to other students in the cafeteria, to come over and talk to A.A. about going to Murry's office. A.A. was upset with Murry, (Doc. No. 83 at 36), and Murry believed A.A. might respond better to Ruckstuhl. (Doc. No. 85 at 27-28).

A.A. acknowledges he was upset but asserts all he said in response to Murry and Ruckstuhl's attempts to convince him to go to the office was "no." (Doc. No. 83 at 36). Murry remembers A.A. as being angry and yelling that he hated the principal. (Doc. No. 85 at 28). Ruckstuhl recalls A.A. offering "a constant rant," and that when A.A. finally got up from the lunch table to go to the principal's office, A.A. began loudly and profanely yelling that he hated the school and the principal. (Ruckstuhl Dep., Doc. No. 86 at 45). According to Ruckstuhl, A.A. "made a comment about if he

2

had a knife, he wanted to stab [Murry]." (*Id.*).  A.A. denies saying anything other than no.  (Doc. No. 83 at 38-39).

After talking in the cafeteria for a while – Ruckstuhl estimates the discussion lasted "for ten plus minutes" – A.A. got up and walked to the school office.  (Doc. No. 86 at 46-47); (*see also* Doc. No. 83 at 38-39).  A.A. sat down in a chair near the door of the outer office area.  There were two other students and two secretaries in the office.  Ruckstuhl did not believe A.A. had a weapon in his possession but was concerned A.A. would grab a pencil, pen, or coffee mug off of a nearby desk and attempt to use those items as weapons.  (Doc. No. 86 at 51-52).  Ruckstuhl kept his eye on A.A. while he went to talk with Murry about where she wanted A.A. to sit.  (*Id.* at 50-53).

Murry informed Ruckstuhl she wanted A.A. to sit in her office rather than in the outer office area.  Ruckstuhl returned to the outer office area to talk with A.A. and attempted to convince A.A. to walk down to Murry's office.  Ruckstuhl told A.A. Ruckstuhl would have to physically move A.A. to Murry's office if A.A. did not go voluntarily.  (Doc. No. 86 at 60).  After several minutes, A.A. stood up and moved to another chair.  (Doc. No. 83 at 40).  Ruckstuhl recalls A.A. wrapping his arms and legs around the frame of the chair and refusing to move, (Doc. No. 86 at 63), though A.A. denies doing so and claims he only refused to comply.  (Doc. No. 83 at 43).

Ruckstuhl then moved closer to the chair to remove A.A. from the chair and move him to Murry's office.  On the day of this incident, A.A. was nine years old.  He was 4 feet, 5 inches tall, and weighed 79 pounds, 2 ounces.  (Doc. No. 84-2 at 42).  Ruckstuhl was 48 years old, 5 feet, 10 inches tall, and approximately 205-210 pounds.  (Doc. No. 86 at 4).

Ruckstuhl states that, after A.A. refused to stand up and walk to Murry's office, Ruckstuhl spent several minutes trying to remove A.A.'s arms from the chair arms and trying to get A.A. out of the chair.  (Doc. No. 86 at 65-70).  He then picked up A.A. around his waist or armpits and carried him down the hall.  (*Id.* at 70-71).  Ruckstuhl was only able to carry A.A. a short distance at a time

before he would need to set A.A. down and then lift him again. (*Id.* at 71-72). Murry recalls Ruckstuhl carrying A.A. down the hall with A.A.'s back to Ruckstuhl's chest, and that A.A.'s arms and legs were free and flailing around. (Doc. No. 85 at 32).

A.A. disputes Ruckstuhl and Murry's description. He asserts Ruckstuhl grabbed each of his wrists, picked him up out of the chair, and carried him down the 30-foot long hallway with his feet approximately a foot off the ground.[1] (Doc. No. 83 at 48-49). Once in Murry's office, Ruckstuhl set A.A. down and A.A. attempted to run out of the office as Ruckstuhl closed the door. (*Id.* at 50). A.A. claims Ruckstuhl pushed him to the ground and put his knee in A.A.'s back to keep him from getting up. (*Id.* at 50-52). Ruckstuhl then gave Murry his cell phone to record what was happening. (*Id.* at 58). A.A. states that, as he laid face-down on the ground, he kept putting his hands underneath his stomach to prevent Ruckstuhl from handcuffing him. (*Id.* at 59). According to A.A., this continued for 10 to 15 minutes before Ruckstuhl succeeded in placing the handcuffs on him. (*Id.*).

Ruckstuhl asserts A.A. hit him with A.A.'s soft-sided lunch box as Ruckstuhl carried A.A. down the hall and that A.A. hit and kicked him after Ruckstuhl got A.A. into Murry's office. (Doc. No. 86 at 76-77). Ruckstuhl closed the door to the office and recalls handcuffing A.A. within a minute or two of closing the door. (*Id.* at 78-80). Murry also estimates Ruckstuhl had handcuffed A.A. approximately one minute after they entered the office. (Doc. No. 85 at 34-35). Ruckstuhl denies placing his knee on A.A. at any point. (Doc. No. 86 at 80-82). He indicates he handed Murry his cell phone immediately after handcuffing A.A. (*Id.* at 86). Ruckstuhl attempted to calm A.A.

---

[1] There were security cameras in the outer office area which recorded much of this incident. (Doc. No. 85 at 45-47). The system is designed to remove recordings after seven days. Murry indicated she did not alert anyone to preserve the recordings because she did not anticipate the incident would become the subject of litigation. (*Id.*).

4

down for roughly five minutes before he eventually was able to move A.A. into a chair to sit and wait for his parents. (*See* Doc. No. 82-3).

A.A. was sitting in the chair when Mirela and Alen arrived at the school. They claim that, as soon as they entered the office, Ruckstuhl "stuck his finger out at [Mirela] and said to [her], I don't know how it is in your nationality and your culture, but here in America, police are the law." (M. Demirovic Dep., Doc. No. 84 at 140-41; A. Demirovic Dep., Doc. No. 82 at 38). Ruckstuhl denies saying anything to either Mirela or Alen before they began demanding he remove the handcuffs and denies he made any comments like the one Mirela and Alen allege. (Doc. No. 86 at 95-96). Murry also denied Ruckstuhl said anything to Mirela "in a harsh manner." (Doc. No. 85 at 41).

Ruckstuhl took Alen into a conference room next to Murry's office to show him a portion of the video Murry recorded on Ruckstuhl's phone. (Doc. No. 86 at 96-98). The parties disagree on this point as well. Alen contends Ruckstuhl showed Alen the entire video on Ruckstuhl's phone, and that this video allegedly was approximately 5 minutes longer than the 5-minute, 37-second video produced during discovery. (Doc. No. 82 at 45-46). Ruckstuhl denies editing or deleting any portion of the recording. (Doc. No. 86 at 107).

After they returned to Murry's office, Ruckstuhl removed the handcuffs because A.A. had calmed down. Ruckstuhl then contacted the prosecutor's office for the Wood County Juvenile Court, who advised Ruckstuhl to allow the school to handle discipline for the incident. (*Id.* at 100-01). A.A. was suspended from school for two days. (Doc. No. 84-2 at 56). Later in the school year, Mirela and Alen withdrew A.A. from the Otsego School District and he completed fourth grade through an online academy.

### III.     STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV. ANALYSIS

Ruckstuhl seeks summary judgment on the following claims: (a) A.A.'s § 1983 claim for the alleged violation of A.A.'s Fourth and Fourteenth Amendment rights; (b) A.A.'s claims for assault and battery, intentional infliction of emotional distress, false arrest, false imprisonment, and negligence per se for the alleged violation of Ohio Revised Code § 2919.22(B); and (c) Mirela's claim for negligent infliction of emotional distress.

#### A. SECTION 1983 CLAIM

Ruckstuhl asserts he is entitled to summary judgment on A.A.'s § 1983 claim for excessive use of force under the qualified immunity doctrine. A government official may avoid civil liability for the official's performance of discretionary functions unless the official's "actions violate clearly established rights of which a reasonable person would have known." *Bunkley v. City of Detroit, Michigan*, 902 F.3d 552, 559 (6th Cir. 2018) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Ruckstuhl is entitled to summary judgment unless Plaintiffs can offer sufficient evidence to create a genuine dispute of material fact as to whether Ruckstuhl violated a clearly-established constitutional right. *Bunkley*, 902 F.2d at 559.

The parties' divergent descriptions of the events of October 8, 2014, create a dichotomy. On one hand, Plaintiffs allege A.A. "was merely an unruly student in a school setting (a

6

commonplace occurrence that teachers handle routinely, without the use of any force) . . . ." *Williams v. Morgan*, 652 F. App'x 365, 372 (6th Cir. 2016). On the other, Ruckstuhl asserts A.A. was belligerent and profane, and that his escalating behavior substantiated Ruckstuhl's increasing concern that A.A. would attempt to harm someone or to flee from the school building. *Cf. Flanigan v. Panin*, 724 F. App'x 375, 377-78 (6th Cir. 2018) ("Determining whether the force used to effect a particular seizure was reasonable requires the court to carefully balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989))).

Ruckstuhl does not dispute that "[i]t is clearly established that officers may not use force on a detainee who is subdued and controlled." *Norton v. Stille*, 526 F. App'x 509, 513 (6th Cir. 2013). He contends his actions did not violate A.A.'s Fourth Amendment rights because A.A. was not "subdued and controlled," but instead posed a safety risk to those around him. In Ruckstuhl's view, A.A.'s version of events is "contradictory and incomplete" and no reasonable jury could believe him. (Doc. No. 80 at 16).

It is true that A.A.'s story contains many assertions that a jury may find difficult to believe. For example, at his deposition, A.A. did not remember the street number for his house, even though he had lived there for five years. (Doc. No. 83 at 14). He denied having any trouble hearing prior to the October 8 incident, (*id.* at 14-15), despite records demonstrating he had numerous ear surgeries throughout his childhood and that his hearing issues were a subject of open communication between his teacher and Mirela. (Doc. No. 84-2 at 1, 17). Later in his deposition, A.A. reversed course and stated he did not obey Murry's direction to stop talking because he had trouble hearing when there was a lot of loud noise. (Doc. No. 83 at 32).

He asserted he left a Bowling Green, Ohio elementary school during the middle of his fifth-grade year because his "parents didn't feel comfortable," (Doc. No. 83 at 23), despite records

7

demonstrating his inter-district enrollment was rescinded because he received an out-of-school suspension in violation of a condition of his open-enrollment admission. (Doc. No. 84-2 at 57). He unequivocally denied having a lunchbox, even though the lunchbox repeatedly appeared in Ruckstuhl and Murry's accounts of the incident. A.A.'s claim that Ruckstuhl lifted him up by his wrists and carried him down the hall is difficult to square with his claim that he then was able to evade Ruckstuhl's efforts to handcuff him for 10-15 minutes. A.A. initially asserted he stopped fighting and sat in a chair once Ruckstuhl had handcuffed him, but then acknowledged he continued struggling and shouting profanities once he was shown the video Murry recorded on Ruckstuhl's cell phone. (Doc. No. 83 at 59-62); (*see* Doc. No. 82-3).

None of these statements, however, directly contradict the basic thrust of A.A's story, which is that he did not threaten anyone and was not out of control before Ruckstuhl first used force to move A.A. from the chair. *Cf. Jones v. City of Elyria, Ohio*, 947 F.3d 905, 915 (6th Cir. 2020) (A violation of Ohio Revised Code § 2921.31, Obstructing Official Business, "requires an 'affirmative act' by the suspect; refusing to comply with an officer's request is not enough." (citations omitted)). A court evaluating an excessive-force claim must balance the governmental interest at stake with "the extent of the intrusion upon the individual" by looking to "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 917 (citations omitted). According to A.A.'s version of events, he had committed no crime, he posed no threat to the safety of others, and he was not actively resisting.

Viewing the evidence in the light most favorable to A.A., the material question is whether a reasonable jury would conclude the school's interest in having its students follow the rules justifies the use of force on a passively-noncompliant fourth-grade student. *See Williams*, 652 F. App'x at 374. What may or may not have occurred after this initial use of force is an outgrowth of the first

8

contact and is not material to whether or not that first contact violated A.A.'s Fourth Amendment right to be free from the excessive use of force. *Barton v. Martin*, 949 F.3d 938, 953 (6th Cir. 2020) (citing *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 638 (6th Cir. 2013), for the proposition "that how much force is reasonable may evolve as an incident progresses and an officer learns new information").

This is not a case where the objective evidence "blatantly contradict[s]" A.A.'s version of events. *Coble v. City of White House, Tenn.*, 634 F.3d 865, 868 (6th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). The video recording from the school's security cameras was automatically deleted pursuant to the school district's standard operating procedures and the recording on Ruckstuhl's phone includes only the last few minutes of the incident. Moreover, A.A.'s records do not disprove his claim that Ruckstuhl carried him by his wrists.

While Ruckstuhl is adamant that A.A.'s noncompliance was anything but passive, this dispute is not one I am permitted to resolve. Whether A.A. is a credible witness is a determination entirely outside of my role under Rule 56. *See, e.g., Shreve v. Jessamine Cnty. Fiscal Court*, 453 F.3d 681, 688 (6th Cir. 2006) ("In determining whether to grant summary judgment, a court may not make determinations of witness credibility.") (citation omitted); *Hanson v. Madison Cnty. Detention Ctr.*, 736 F. App'x 521, 538-39 (6th Cir. 2018) (holding that, even if a video recording blatantly contradicted part of a plaintiff's testimony, the district court "could not discredit his entire version of the events") (emphasis in original).

Taken in the light most favorable to A.A., "the facts alleged show the officer's conduct violated" his constitutional right to be free from the use of excessive force. *Scott*, 550 U.S. at 377. Ruckstuhl is not entitled to summary judgment under the doctrine of qualified immunity because that right was clearly established at the time of the incident. *See, e.g., Norton*, 526 F. App'x at 513.

B. STATE-LAW CLAIMS

Ruckstuhl also moved for summary judgment on A.A. and Mirela's claims under Ohio law, asserting he is entitled to summary judgment on these claims based upon state-law immunity or, in the alternative, because these claims lack merit. (Doc. No. 80 at 22-25). A.A. argues Ruckstuhl is not entitled to state-law immunity under the qualified-immunity analysis and that, without immunity, Ruckstuhl is not entitled to summary judgment on Plaintiffs' assault and battery and negligent infliction of emotional distress claims. (Doc. No. 91 at 21-23).

Ohio law makes state employees immune from liability for their conduct unless, among other reasons, the employee's "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 2744.03(A)(6)(b). This standard "requires either intentional wrongdoing or a total disregard of a clear risk of harm." *Jones*, 947 F.3d at 920. Viewing the facts in the light most favorable to Plaintiffs, Ruckstuhl is not entitled to state-law immunity because there was no reason for him to arrest A.A. and such an arrest would likely lead to harm to A.A. or to Ruckstuhl. *Id.* at 921.

Even without immunity, Ruckstuhl still may be entitled to summary judgment on Plaintiffs' state-law claims. As Ruckstuhl notes, Plaintiffs did not respond to his summary judgment motion regarding the false arrest, false imprisonment, intentional infliction of emotional distress, and negligence per se claims. Ruckstuhl asserts the evidence fails to show he knew or should have known his conduct would cause "serious emotional distress," that his detention of A.A. was unlawful, or that the duration of the time period during which A.A. was handcuffed was excessive or created a substantial risk of serious harm to A.A.[2] (Doc. No. 80 at 24-25). Because they failed to respond to Ruckstuhl's motion regarding these claims, I conclude Plaintiffs have waived opposition

---

[2] As I noted above, the questions of (1) whether Ruckstuhl used excessive force and (2) whether he was permitted to handcuff and detain A.A. after the incident began are not coextensive. *Barton*, 949 F.3d at 953.

10

to those portions of Ruckstuhl's motion. *See, e.g., Hitchcock v. Cumberland Univ. 403(b) DC Plan*, 851 F.3d 552, 566 (6th Cir. 2017) (citing *Humphrey v. United States Att'y Gen.'s Office*, 279 F. App'x 328 (6th Cir. 2008)); *Scott v. Tennessee*, 878 F.2d 382, *2 (6th Cir. 1989) (unpublished table decision). Therefore, they fail to establish a genuine dispute of material fact as to these claims. I conclude Ruckstuhl is entitled to summary judgment as a matter of law on Plaintiffs' Sixth, Seventh, Eighth, and Eleventh Claims for Relief.

Ruckstuhl also is entitled to summary judgment on Mirela's claim for negligent infliction of emotional distress. Mirela alleges only that she was "forced" to observe the recording of A.A. after he was handcuffed and that she "reasonably appreciated the peril faced by A.A. at the hands of Ruckstuhl." (Doc. No. 15 at 14). This claim has no merit, as she did not "sustain a physical impact" during the incident and was not "placed in immediate risk of physical harm" by Ruckstuhl's conduct. *Dobran v. Franciscan Med. Ctr.*, 806 N.E.2d 537, 540 (Ohio 2004) (citations and quotation marks omitted). Mirela was not a bystander to the incident itself and fails to show she reasonably feared "physical peril" to herself as a result of Ruckstuhl's conduct. *Pritchard v. Hamilton Twp. Bd. of Trustees*, No. 1:08-cv-239, 2009 WL 10679551, *16 (S.D. Ohio Dec. 2, 2009).

Ruckstuhl, however, fails to show the absence of a genuine dispute of material fact as to A.A.'s assault and battery claim. According to A.A.'s version of the events, a jury could conclude Ruckstuhl used more force than was reasonably necessary during the incident. *See, e.g., Gill v. Kovach*, 729 F.Supp.2d 925, 942 (N.D. Ohio 2010). Therefore, I deny Ruckstuhl's motion for summary judgment as to the Fourth Claim for Relief.

## V. CONCLUSION

For the reasons stated above, I deny Ruckstuhl's motion for summary judgment as to Plaintiffs' Second and Fourth Claims for Relief and grant his motion as to Plaintiffs' Fifth, Sixth, Seventh, Eighth, and Eleventh Claims for Relief. (Doc. No. 80).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge
